ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| BASAA S.A. - DDA<br><br>Parte Apelante<br><br><br>v.<br><br><br><br>NODUS INTERNATIONAL BANK, INC.; COMPAÑÍAS DE SEGUROS X, Y, Z<br><br>Parte Apelada | KLAN202500181 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2023CV04526<br><br>SALA: 901<br><br><br>Sobre: Incumplimiento de Contrato, Cobro de Dinero, Daños |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 25 de marzo de 2025.

Compareció ante este Tribunal la parte apelante, BASAA S.A.-DDA (en adelante, "BASAA" o "Apelante"), mediante recurso de apelación presentado el 4 de marzo de 2025. Nos solicitó la revocación de la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el "TPI"), el 17 de diciembre de 2024, notificada y archivada en autos al día siguiente. Dicho dictamen fue objeto de una "**Moción en Solicitud de Reconsideración de Sentencia**" interpuesta por el Apelante, la cual fue declarada "No Ha Lugar" el 28 de enero de 2025.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia* apelada.

**I.**

El caso de epígrafe tuvo su inicio el 15 de mayo de 2023, con la presentación de una "**Demanda**" por parte de BASAA en contra de Nodus International Bank, Inc. (en adelante, "Nodus" o "Apelado") y otros codemandados de nombres desconocidos sobre incumplimiento de contrato, cobro de dinero y daños contractuales. Mediante la misma, alegó

Número Identificador
SEN2025_____

que suscribió cierto contrato con Nodus, a través del cual depositó en dicha institución bancaria para propósitos de inversión la cantidad de $325,249.71. Expresó que, para el 16 de febrero de 2023, su cuenta bancaria mantenía un balance de $325,239.71. Arguyó que, desde dicha fecha, no había recibido estados de cuentas adicionales. Argumentó que le solicitó al Apelado que transfiriera su dinero a otra cuenta y que éste se negó a hacerlo. Indicó que Nodus tampoco había respondido a las comunicaciones que le habían sido enviadas. Señaló que, como consecuencia de lo anterior, intentó comunicarse con la entidad a través de su presidente. Manifestó que, a pesar de que el presidente le expresó que se estarían comunicando para brindarle la información solicitada sobre la transferencia de su dinero, nunca lo hicieron y tampoco le respondieron las llamadas.

Asimismo, sostuvo que había realizado todas las gestiones encaminadas a la solicitud y devolución de su dinero, pero que éstas fueron infructuosas. Adujo que los daños ocasionados por dicho incumplimiento ascendían a la cantidad de $10,000.00. En vista de lo anterior, le solicitó al Tribunal que declarara "Ha Lugar" la "**Demanda**" y ordenara a Nodus a realizar los siguientes pagos: (1) $325,249.71, (2) $10,000.00 por concepto de daños contractuales y (3) $5,000.00 por concepto de honorarios de abogado.

Tras varios trámites procesales, el 3 de agosto de 2023, el Apelado presentó una "**Moción en Solicitud de Desestimación por Falta de Jurisdicción**" (en adelante, "Moción de Desestimación"), en la que informó que el 5 de mayo de 2023 se consumó la renuncia de su licencia para operar como entidad bancaria internacional y entró en vigor el *Plan of Voluntary Liquidation and Dissolution of Nodus International Bank, Inc* (en adelante, "Plan de Liquidación y Disolución")*.* Mencionó que dicho plan era conducido bajo la supervisión de la Oficina del Comisionado de Instituciones Financieras (en adelante, "OCIF"), que es el ente que gobierna las operaciones de Nodus, incluyendo el cese de operaciones y negocios y la preservación del valor de los activos con el propósito de alcanzar una

liquidación y disolución ordenada. Resaltó que el *Plan de Liquidación y Disolución* le requería la realización de pasos afirmativos con el fin de reunir todas las reclamaciones de sus acreedores en un solo proceso. De igual manera, alegó que, debido a la complejidad inherente que conllevaba la liquidación y disolución de una institución financiera, el organismo facultado para fiscalizar y supervisar las entidades bancarias internacionales lo es la OCIF. Para sustentar su posición, hizo alusión al caso de San José Realty, S.E. v. El Fenix de PR, 157 DPR 427 (2002), en el que el Tribunal Supremo resolvió que todo proceso de liquidación debe ser atendido por una sola entidad con visión integral de toda la problemática respecto a la capacidad financiera de la aseguradora en cuestión. Así pues, aseveró que los tribunales de Puerto Rico carecían de jurisdicción para entender en las controversias traídas ante la consideración del TPI.

Oportunamente, BASAA presentó su "**Oposición a Moción en Solicitud de Desestimación por Falta de Jurisdicción**" (en adelante, "Oposición"), en la que explicó que el presente caso se distinguía del caso de San José Realty, S.E. v. El Fenix de PR, *supra*, puesto que Nodus no era una aseguradora y el Código de Seguros no era aplicable a la controversia aquí en cuestión. Asimismo, señaló que ni los tribunales de Puerto Rico ni la OCIF habían decretado la insolvencia del Apelado. Expresó que el *Plan de Liquidación y Disolución* suscrito entre la OCIF y Nodus no contempló la insolvencia de este último, sino que se enfocó en la transferencia de un sobrante final a los accionistas del Apelado. Además, enunció que Nodus incumplió con el mencionado plan al no notificarles sobre su existencia y rehusarse a transferir a otra entidad depositaria la totalidad de sus fondos dentro del término de 90 días dispuesto en dicho acuerdo. A tenor con lo anterior, le peticionó al TPI que declarara "No Ha Lugar" la *Moción de Desestimación.*

Así las cosas, el 30 de agosto de 2023, Nodus presentó su "**Réplica a Oposición a Moción en Solicitud de Desestimación por Falta de Jurisdicción**" mediante la cual reiteró los argumentos esbozados en su *Moción de Desestimación* y aclaró que citó el caso de San José Realty, S.E.

v. El Fenix de PR, *supra*, con el único propósito de destacar que el Tribunal Supremo ha reconocido la necesidad de que los acreedores de una entidad bajo liquidación se reúnan en un solo foro, de manera que se garantice una liquidación expedita, justa y ordenada. Asimismo, señaló que contrario al estatuto aplicable a las aseguradoras, la legislación sobre banca internacional no le confería jurisdicción a los Tribunales de Primera Instancia de Puerto Rico. Por último, manifestó que la OCIF es quien puede determinar si existe algún incumplimiento con el *Plan de Liquidación y Disolución* por ser quien tiene jurisdicción para supervisarlo.

El 17 de octubre de 2023, el TPI emitió una *Orden* en la que le requirió a la OCIF a comparecer dentro del término de 20 días. Más adelante, el 23 de octubre de 2023, el Apelado presentó una "**Moción en Informativa Sobre Querella, Orden y Resolución de la Oficina del Comisionado en Instituciones Financieras**" mediante la cual informó que el 3 de octubre de 2023 la Comisionada de OCIF presentó una "**Querella y Orden Provisional y Permanente para el Nombramiento de un Síndico y Revocación de Licencia**" (en adelante, "Querella y Orden"), caso núm. C-23-D-004, a través de la cual nombró a Driven Advisors, P.S.C. como síndico para que tomara posesión y control de los activos y pasivos de Nodus. De igual manera, notificó que el 16 de octubre de 2023 la OCIF emitió una *Resolución*, a través de la cual le dio carácter permanente a la mencionada *Orden* hasta tanto se culminara el procedimiento de liquidación del banco.

Posteriormente, el 9 de noviembre de 2023, la OCIF presentó un escrito intitulado: "**Comparecencia Especial de la Oficina del Comisionado de Instituciones Financieras de Puerto Rico en Cumplimiento de Orden**". Sostuvo que era el foro con jurisdicción primaria para supervisar, fiscalizar y auditar las entidades bancarias internacionales, tales como Nodus, y requerir de ellas el cumplimiento de todas las leyes y reglamentos aplicables. De igual manera, resaltó que cuenta con los recursos y el personal especializado necesario para lograr la protección de los intereses de todas las partes involucradas en la industria en cuestión. También acentuó que, en caso de que un acreedor de Nodus entienda que

es afectado por la *Querella y Orden* emitida por la OCIF, debía acudir ante el síndico para reclamar sus derechos y, posteriormente, seguir el procedimiento de reconsideración y revisión judicial disponible para revisar las decisiones finales de las agencias administrativas.

El 18 de diciembre de 2023, BASAA presentó su "**Oposición a Comparecencia Especial de la Oficina del Comisionado de Instituciones Financieras de Puerto Rico**", en la que argumentó que la OCIF no poseía la autoridad para entender en las controversias relacionadas a las materias de contratos de cuentas de depósito y de daños contractuales. Especificó que de las leyes habilitadoras de la OCIF no se desprende ni explicita ni implícitamente que la legislatura hubiera tenido la intención de concederle jurisdicción en dichos asuntos. Añadió que las materias en cuestión están sujetas al Código Civil de Puerto Rico, por lo que el foro con el poder para resolver los reclamos presentados por BASAA lo era el TPI.

Finalmente, y tras múltiples trámites procesales, el 18 de diciembre de 2024, el TPI emitió una *Sentencia* mediante la cual determinó que los procesos de liquidación y disolución de entidades bancarias internacionales deben ser conducidos bajo la supervisión de la OCIF y del síndico designado, por lo que estaba privado de atender las reclamaciones presentadas en contra de Nodus, especialmente aquellas que pudiesen tener los cuentahabientes sobre sus depósitos. Insatisfecho con esta decisión, el Apelante presentó una "**Moción en Solicitud de Reconsideración de Sentencia**", la cual fue declarada "No Ha Lugar".

Inconforme con lo anteriormente resuelto, BASAA acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló el siguiente error:

> ERRÓ EL TPI AL DESESTIMAR LA CAUSA DE ACCIÓN EN CONTRA DE NODUS INTERNATIONAL BANK, INC. AL DETERMINAR QUE OCIF TENÍA JURISDICCIÓN SOBRE LA MATERIA CUANDO LOS CONTRATOS DE DEPÓSITO Y LAS RECLAMACIONES DE DAÑOS CAEN FUERA DE LA JURISDICCIÓN DE LA AGENCIA ADMINISTRATIVA.

El 24 de marzo de 2025, Nodus presentó su "**Alegato: Oposición a Apelación**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### A.

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, y su jurisprudencia interpretativa le confiere al demandado la oportunidad de presentar cualquiera de las siguientes defensas: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) que las alegaciones del demandante dejan de exponer una reclamación que justifique la concesión de un remedio; y (6) la falta de una parte indispensable. Conde Cruz v. Resto Rodríguez, 205 DPR 1043, 1066 (2020).

La moción de desestimación bajo la Regla 10.2 de Procedimiento Civil, *supra*, es una defensa que formula el demandado antes de presentar su contestación a la demanda, en la cual solicita que se desestime la demanda presentada en su contra. Aut. Tierras v. Moreno & Ruiz Dev. Corp., 174 DPR 409, 428 (2008); Colón v. Lotería, 167 DPR 625, 649 (2006). En general, la Regla 10.2 de Procedimiento Civil, *supra*, recoge defensas que pueden plantearse, a opción del demandado, en una moción de desestimación antes de contestar o en la misma contestación a la demanda. Casillas Carrasquillo v. ELA, 209 DPR 240, 247 (2022).

Así pues, para conceder una moción de desestimación bajo la aludida Regla, se debe efectuar un análisis de las siguientes consideraciones: (1) tomar como ciertos los hechos bien alegados en la demanda; (2) analizar el ataque al vicio intrínseco en la primera alegación; y (3) poseer el convencimiento de que el promovente de la acción no tiene remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, a pesar de que se interprete la demanda de la manera más liberal a su favor. Comisión v. González Freyre *et al.*, 211 DPR 579, 614-615 (2023).

**B.**

El término jurisdicción ha sido definido como el poder y autoridad que poseen los tribunales y las agencias administrativas para considerar y decidir sobre las controversias ante su consideración. Cobra Acquisitions v. Municipio de Yabucoa et al., 210 DPR 384, 394 (2022). Para adjudicar un caso, el tribunal o la agencia debe tener jurisdicción tanto sobre la materia en cuestión como sobre las partes en disputa. Adm. Terrenos v. Ponce Bayland, 207 DPR 586, 600 (2021). Por ello, nuestro Tribunal Supremo ha sostenido reiteradamente que los tribunales y las agencias administrativas debemos ser celosos guardianes de nuestra jurisdicción y que los asuntos relacionados con esta son privilegiados y deben atenderse de manera preferente. Torres Alvarado v. Madera Atiles, 202 DPR 495, 500 (2019).

La ausencia de jurisdicción conlleva las siguientes consecuencias inexorablemente fatales: (1) la falta de jurisdicción no es susceptible de ser subsanada, (2) las partes no pueden voluntariamente otorgarle jurisdicción sobre la materia a un tribunal o a una agencia, ni estos pueden abrogársela, (3) los dictámenes de un foro sin jurisdicción sobre la materia son nulos, (4) los tribunales y las agencias tienen el ineludible deber de auscultar su propia jurisdicción, (5) los tribunales apelativos, además, deberán examinar la jurisdicción del foro de donde procede el recurso y (6) el planteamiento de falta de jurisdicción sobre la materia puede presentarse en cualquier etapa del procedimiento. Allied Mgmt. Group. v. Oriental Bank, 204 DPR 374, 386 (2020). Por tanto, si se carece de jurisdicción, solo resta declararlo así y desestimar la reclamación sin entrar en los méritos de la controversia. Beltrán Cintrón et al. v. ELA et al., 204 DPR 89, 102 (2020).

**C.**

La Ley Núm. 4 del 11 de octubre de 1985, según enmendada, mejor conocida como la "Ley de la Oficina del Comisionado de Instituciones Financieras" (en adelante, "Ley Núm. 4"), se creó con el fin ulterior de proteger los intereses de las personas que están vinculadas a las industrias de la banca, de valores y de instituciones financieras en Puerto Rico por ser

depositantes, acreedores, accionistas u otro tipo de asociación. *Véase*, Exposición de Motivos de la Ley Núm. 4, *supra*.

A fin de cumplir con dicho propósito, se creó la OCIF, quien es la responsable de fiscalizar y supervisar las entidades financieras que operen o hagan negocios en Puerto Rico, incluyendo a las organizadas bajo la Ley Núm. 52 de 11 de agosto de 1989, *infra*. Entre las facultades del Comisionado de la OCIF, se encuentran las siguientes, a saber: (1) reglamentar sus procedimientos y normas de trabajo; (2) atender, investigar y resolver querellas; (3) interponer cualquier remedio, acción o procedimiento legal que sea necesario o conveniente para hacer efectivos los propósitos de dicho estatuto; (4) llevar a cabo todas las acciones requeridas para lograr eficazmente los objetivos de la ley; e (5) imponer multas administrativas por las violaciones a las leyes que administra o a las reglas, reglamentos y órdenes aprobados o dictados por él. 7 LPRA sec. 2010.

En consonancia con lo anterior, el inciso (b) del Artículo 10 de la Ley Núm. 4, *supra*, dispone que cuando la institución financiera no cuente con una situación económica estable, el Comisionado podrá tomar el control y administración de la institución financiera y nombrar un síndico. En detalle, establece lo siguiente:

> Si como consecuencia de una auditoría, examen o inspección o de un informe rendido por un examinador, se demuestre que la institución financiera carece de una situación económica y financiera sólida o que está operada o administrada de tal manera que el público o las personas y entidades que tengan fondos o valores bajo su custodia estén en peligro de ser defraudados y en ausencia de disposición específica en la ley que regule la institución financiera en cuestión y que lo faculte similarmente, el Comisionado podrá asumir la dirección y administración de la institución financiera, y nombrar con prontitud un síndico, que en el caso de instituciones financieras aseguradas podrá ser su ente asegurador. El Comisionado deberá celebrar una vista antes de emitir una orden para colocar una institución financiera bajo su dirección o la de un síndico. No obstante, el Comisionado podrá emitir una orden provisional nombrando un síndico administrador sin necesidad de celebrar una vista cuando a su juicio la situación de la institución financiera sea de tal naturaleza que se esté causando o pueda causarse daño irreparable a los intereses de la misma, o de las personas y entidades con fondos o valores en la institución.

[…]

> **El síndico así nombrado administrará la institución financiera de acuerdo a las disposiciones de la ley y reglamentos que gobiernan dicha institución y a tenor con los reglamentos promulgados por el Comisionado para sindicaturas o medidas de emergencia declaradas bajo esta sección de ley**.
>
> **Dicha sindicatura terminará con la total liquidación de la institución financiera si así fuere necesario o cuando las operaciones de la misma según lo certifique el síndico, permitan, a juicio del Comisionado, devolver la administración de la institución a sus funcionarios y oficiales, debidamente electos y nombrados, bajo aquellas circunstancias que estipule el Comisionado**. El Comisionado podrá fijar una compensación razonable por los servicios del síndico y los empleados de éste. La determinación del Comisionado de asumir la administración y dirección de una institución financiera o de nombrar un síndico podrá ser revisada por el Tribunal del Circuito de Apelaciones, mediante recurso radicado dentro del término de diez días contados a partir de la fecha de la determinación. 7 LPRA sec. 2010 (b) (énfasis suplido).

En otras palabras, si una auditoría, inspección o examen demuestra que la institución financiera carece de estabilidad económica o que está siendo gestionada de forma que ponga en peligro los fondos de los clientes, el Comisionado tiene la facultad de nombrar un síndico de inmediato. No será necesaria la celebración de una vista, cuando a su juicio, la situación sea de tal gravedad que esté causando, o pueda causar un daño irreparable a los intereses de la institución o de las personas y entidades con fondos y valores en ella. De conformidad con lo anterior, el síndico se convierte en el administrador de la institución financiera, a tenor con la reglamentación vigente sobre sindicaturas o medidas de emergencia.

Por otro lado, la Ley Núm. 52 de 11 de agosto de 1989, según enmendada, mejor conocida como la "Ley Reguladora del Centro Bancario Internacional" (en adelante, "Ley Núm. 52"), fue promulgada con el objetivo de promover que las entidades bancarias internacionales lleven a cabo negocios y actividades en Puerto Rico de manera competitiva y eficiente. *Véase*, Exposición de Motivos de la Ley Núm. 52, *supra*. A fin de cumplir este propósito, el citado estatuto amplió considerablemente el número de personas y entidades que pueden participar, así como el alcance de los negocios que pueden llevarse a cabo bajo su marco. Íd. De igual manera, aumentó los incentivos económicos para hacerla más atractiva, flexibilizó la forma de organizar las entidades bancarias internacionales y eximió a las

personas y entidades extranjeras del pago de contribuciones sobre la distribución de dividendos y beneficios. Íd.

Entre las facultades y deberes que el estatuto le otorga al Comisionado, se encuentran las siguientes: (1) supervisar, fiscalizar y auditar las entidades bancarias internacionales; (2) asegurar la estabilidad financiera y adecuacidad operacional de las entidades bancarias internacionales; (3) revocar o suspender una licencia para operar una entidad bancaria internacional, así como imponer otras sanciones que pueda creer necesarias, de conformidad con su reglamentación; y (4) llevar a cabo todos los actos y remedios que sean necesarios para el cumplimiento de la ley. 7 LPRA sec. 232a.

En línea con lo anterior, la Sección 18 de la Ley Núm. 52, *supra,* regula lo concerniente a la revocación, suspensión o **renuncia** de las licencias de operación de entidades bancarias internacionales. En específico, y en su parte pertinente, indica lo siguiente:

[…]

(b**) Una entidad bancaria internacional o la persona de la cual dicha entidad bancaria internacional es una unidad, podrá en cualquier momento, y en la manera provista por los reglamentos del Comisionado, las cartas circulares o los documentos guía aplicables a las EBIs, renunciar a su licencia para operar una entidad bancaria internacional notificando su decisión al Comisionado por lo menos treinta (30) días antes de hacer efectiva su renuncia e incluyendo su plan de liquidación**. Como parte de dicho plan de liquidación, la entidad bancaria internacional, sujeto a la aprobación del Comisionado, podrá liquidar sus activos, cumplir con sus obligaciones, fusionarse o consolidarse con otra persona jurídica, convertirse en otra persona jurídica, o reorganizarse en otra jurisdicción, o disolverse, en todo caso, a tenor con las leyes que sean aplicables. El Comisionado podrá ordenar y realizar un examen del negocio antes de aceptar la renuncia de la licencia. Si luego del examen se encontrase que la entidad bancaria internacional ha cometido alguna violación de ley, el Comisionado podrá revocar la licencia e imponerle la penalidad que corresponda, conforme a lo dispuesto en esta Ley. El Comisionado podrá citar a la persona que ha renunciado a la licencia a una reunión en la cual vendrá obligado a entregar la licencia y pagar las deudas que tenga vigentes con la Oficina del Comisionado.

(c) **Ninguna renuncia, revocación, cancelación o suspensión de cualquier licencia disminuirá o afectará las obligaciones derivadas de cualquier contrato válido existente entre la entidad bancaria internacional y otras personas**. 7 LPRA sec. 232n (énfasis suplido).

Esto es, las entidades bancarias internacionales pueden renunciar en cualquier momento a su licencia para operar como tal en nuestra jurisdicción, <u>sin que se entienda que dicha renuncia tiene la capacidad de disminuir o afectar las obligaciones que se derivan de contratos válidos existentes entre la institución bancaria y otras personas</u>. En línea con lo anterior, la Sección 19 de la Ley Núm. 52, *supra*, dispone que el Comisionado también posee la facultad de nombrar un síndico y ordenar la disolución de una entidad bancaria internacional cuando la licencia de dicha entidad ha sido revocada o renunciada, de conformidad con la Sección 18 de dicha ley o cuando algún accionista o integrante es convicto por un delito grave o por un delito que implique fraude, lavado de dinero, evasión contributiva o depravación moral. 7 LPRA sec. 232o (a). El síndico será el encargado de: (1) tomar posesión de los activos, pasivos y archivos que le pertenezcan a la entidad bancaria internacional; (2) cobrar los préstamos, cargos y honorarios que adeude la entidad; (3) **satisfacer las deudas y obligaciones de la entidad bancaria internacional, luego de realizar el pago de los gastos necesarios de la sindicatura; y (4) supervisar la disolución y liquidación de la entidad bancaria internacional**. 7 LPRA sec. 232o (c).

Por último, consideramos que los principios consagrados por nuestro Tribunal Supremo en <u>San José Realty, S.E. v. El Fénix de PR</u>, *supra*, son aplicables al presente caso. Allí el máximo foro judicial determinó que, una vez iniciado un procedimiento de liquidación de una compañía aseguradora, todas las reclamaciones en su contra deben tramitarse en un solo foro. <u>Íd</u>., pág. 442. **De igual manera, señaló que, la unificación de dichos reclamos permite una adjudicación ordenada y evita la dispersión injustificada e innecesaria de los activos de la compañía, lo que ocurriría si el liquidador tuviera que defenderse de acciones aisladas en diferentes foros**. <u>Íd</u>., pág. 442 y 443.

**III.**

En el presente caso, el Apelante nos solicitó la revocación de la *Sentencia* del TPI en la que se declaró "Ha Lugar" la *Moción de Desestimación* interpuesta por Nodus.

Como único señalamiento de error, BASAA señala que el TPI incidió al desestimar la causa de acción en contra del Apelado bajo el fundamento de que la OCIF es quien tiene jurisdicción sobre la materia cuando los contratos de depósito y las reclamaciones de daños caen fuera de la jurisdicción de dicha agencia administrativa. No nos convence su postura. Veamos.

Surge del expediente ante nuestra consideración que el Apelante suscribió cierto contrato con Nodus a través del cual depositó la cantidad de $325,249.71 para propósitos de inversión. Relacionado a lo anterior, no existe controversia sobre el hecho de que el Apelado operaba como una institución bancaria internacional, sujeta a las disposiciones de la Ley Núm. 52, *supra.* Tampoco existe contención sobre el hecho de que el 5 de mayo de 2023 Nodus renunció a su licencia para operar como entidad bancaria internacional. Posteriormente, entró en vigor el *Plan de Liquidación y Disolución* de Nodus con el fin de liquidar y disolver sus activos de manera ordenada. En su parte pertinente, dicho Plan dispone lo siguiente:

**5. Liabilities; Payment to Creditors.**

**(A) During the Liquidation Period, the Administrator shall cause Nodus to transfer the funds and/or assets and close any corresponding Custodians(s) and pay, discharge, or other otherwise provide for the payment or discharge of, any and all Expenses of Nodus and <u>other liabilities and obligations of Nodus</u>**, as follows:

<u>First</u>, within the first one hundred and twenty (120) days after the Effective Date of the Plan, Nodus, with the approval of the Administrator, shall cause the funds and/or assets maintained in the Tier 1 Accounts to be transferred from the Account to the Customer or to an account selected by the Customer and notified to Nodus, and Nodus shall thereafter close the Account; provided, however that if the account to which such assets of the Customer are to be transferred is in or under the management of a Related Person, no such transfer shall be effected unless authorized by the OCFI.

<u>Second</u>, within the two hundred and seventy (270) days after the Effective Date of the Plan, Nodus, with the approval of the Administrator, shall cause the funds and/or assets maintained in the Tier 2 Accounts to be transferred from the Account to the

Customer or to an account selected by the Customer and notified to the Company, and Nodus shall thereafter close the Account; provided, however that if the Account to which such assets of the Customer are to be transferred is in or under the management of a Related Person, no such transfer shall be effected unless authorized by the OCFI; provided, however for the avoidance of doubt, that the transfer of the Tier 2 Accounts may be commenced during the transfer of the Tier 1 Accounts.

Third, within the first three hundred and sixty five (365) days after the Effective Date of the Plan, Nodus, with the approval of the Administrator, shall cause the funds and/or assets maintained in the Tier 3 Accounts to be transferred from the Account to the Customer or to an account selected by the Customer and notified to Nodus, and Nodus shall thereafter close the Account; provided, however that if the account to which such assets of the Customer are to be transferred is in or under the management of a Related Person, no such transfer shall be effected unless authorized by the OCFI; provided, however for the avoidance of doubt, that the transfer of the Tier 3 Accounts may be commenced during the transfer of the Tier 1 Accounts and the Tier 2 Accounts; provided further that Nodus will use its commercially reasonable best efforts to obtain the approvals from the applicable governmental authorities for the release of the assets and/or the closing of the respective accounts including, if applicable, the transfer to a trustee approved or designated by such governmental authorities.

Fourth, during the Liquidation Period Nodus shall pay its Obligations when due either per the terms of a contract or by requirement of law.

Fifth, during the Liquidation Period, Nodus may pay any Obligations on or before they are due to its Creditors; provided however, that such payments shall only occur in the event that Nodus has established and fully funded the Cash Reserve Account.[1]

Cabe destacar que el referido plan define el término acreedor de la siguiente manera: "a person with whom has an outstanding contractual payment obligation, including but not limited to depositers, lenders, lessors, service providers and employees".[2] Más adelante, el 15 de mayo de 2023 BASAA interpuso una "**Demanda**" en contra del Apelado por incumplimiento de contrato, cobro de dinero y daños contractuales alegando que éste incumplió el contrato suscrito por ambos. Así las cosas, el 16 de octubre de 2023, la OCIF nombró a Driven como síndico de Nodus para que tomara posesión y control de los activos y pasivos de dicha entidad. En relación con los poderes que el síndico tiene sobre el Apelado, la mencionada *Orden y Querella* dispone expresamente lo siguiente:

---

[1] *Véase*, Apéndice del Recurso de Apelación, págs. 23-24 (énfasis suplido).
[2] *Véase*, Apéndice del Recurso de Apelación, pág. 21.

1. Tomar posesión inmediata de los activos y pasivos, libros, registros, documentos y archivos que le pertenezcan a Nodus. De conformidad con lo anterior, el Síndico habrá de ocupar y ejercer las funciones que el cuerpo de la Junta de Directores de la EBI tiene al día de hoy. **Además, será el objetivo principal del Síndico organizar los asuntos de la entidad de manera tal que se pueda completar el proceso de la disolución y liquidación de Nodus sin mayor dilación**.

2. Para llevar a cabo la liquidación, el Síndico tendrá la autoridad y facultad de disponer, ceder o convertir activos de Nodus de manera que los mismos sean reducidos a efectivo, incluyendo, pero sin que se entienda como una limitación, el cobro de préstamos y reclamaciones de Nodus.

3. **El Síndico tomará el control inmediato de las cuentas de banco de Nodus**, así como de todas sus inversiones y activos. El Síndico deberá cobrar simultáneamente todos los préstamos, cargos y honorarios que se adeuden a Nodus. El Síndico, además, deberá ser apoderado para suscribir todos los documentos que fueren necesarios ante instituciones financieras o terceros para realizar estas funciones.

[…]

7**. El Síndico será el encargado de pagar las obligaciones y deudas de Nodus después de haber realizado el pago de los gastos necesarios y directamente relacionados a la sindicatura**.[3]

De igual manera, la referida *Orden y Querella* establece claramente que su intención es "darle preferencia y certeza jurídica al pago de los depósitos de los clientes de Nodus".[4] Además, dispone que, a partir de la fecha de su emisión, toda reclamación, **ya sea judicial o extrajudicial, que tenga alguna persona o entidad en contra de Nodus, deberá dirigirse a la atención de Driven y atenderse dentro del proceso de liquidación de la OCIF**.[5] El 16 de octubre de 2023, OCIF emitió una *Resolución* a través de la cual confirmó la *Querella* y le dio carácter permanente a la *Orden* hasta tanto se culmine el procedimiento de liquidación de la entidad bancaria aquí en cuestión. El 17 de diciembre de 2024, el TPI desestimó la "**Demanda**" presentada por BASAA, fundamentándose en que el foro con jurisdicción para atender la controversia lo es OCIF.

Conforme hemos reseñado en los acápites anteriores, la Ley Núm. 4, *supra*, creó la OCIF, como la entidad encargada de fiscalizar y supervisar las entidades financieras que operan o realizan negocios en Puerto Rico.

---

[3] *Véase*, Apéndice del Recurso de Apelación, págs. 51-52 (énfasis suplido).
[4] *Véase*, Apéndice del Recurso de Apelación, pág. 53.
[5] *Véase*, Apéndice del Recurso de Apelación, pág. 55.

Las facultades transferidas al Comisionado incluyen atender y resolver querellas, imponer sanciones administrativas y adoptar los remedios que sean necesario para hacer efectivos los propósitos del estatuto. 7 LPRA sec. 2010. De igual manera dicho funcionario tiene la potestad de asumir la dirección y administración de la institución financiera y nombrar un síndico cuando la institución financiera carezca de una situación económica y financiera sólida. 7LPRA sec. 2010 (b).

Por otro lado, la Ley Núm. 52, *supra*, regula específicamente las entidades bancarias internacionales que llevan a cabo negocios y actividades en Puerto Rico. Al igual que la Ley Núm. 4, *supra*, este estatuto le confiere al Comisionado de la OCIF la facultad de fiscalizar las entidades bancarias internacionales y de realizar todas las acciones necesarias para cumplir con sus objetivos específicos, incluyendo el nombramiento de síndicos. 7 LPRA sec. 232a y 232o (a). Asimismo, establece que los bancos pueden, en cualquier momento, renunciar a su licencia para operar como entidades bancarias internacionales, siempre y cuando notifiquen su decisión al comisionado por lo menos treinta (30) días antes de hacer efectiva su renuncia e incluyan un plan de liquidación. 7 LPRA sec. 232n.

Por su parte, nuestro Tribunal Supremo en San José Realty, S.E. v. El Fénix de PR, *supra*, estableció ciertos principios que consideramos relevantes para la resolución de la presente controversia. Específicamente, indicó que, una vez comienza el procedimiento de liquidación de una compañía, en este caso, una entidad bancaria, todas las reclamaciones en su contra deben ser atendidas en un mismo foro con visión integral de toda la problemática en cuestión. Íd., pág. 442. **Asimismo, explicó que la consolidación de estos reclamos permite una adjudicación ordenada y evita la dispersión injustificada e innecesaria de los activos de la entidad, lo que ocurriría si el liquidador tuviera que defenderse de acciones aisladas en diferentes foros**. Íd., págs. 442 y 443.

El Apelante sostiene que la OCIF no posee jurisdicción sobre la acción de incumplimiento contractual reclamada en la "**Demanda**", por lo que no tiene la potestad para conceder los daños reclamados por BASAA.

Tras un análisis detallado y riguroso del expediente ante nuestra revisión, incluyendo la "**Demanda**", la *Moción de Desestimación* y su correspondiente *Oposición,* así como las disposiciones estatutarias y jurisprudenciales aplicables, hemos arribado a la conclusión de que el foro con jurisdicción para atender las controversias traídas ante la consideración del TPI lo es la OCIF. Nótese que, tanto la Ley Núm. 52, *supra*, como la Ley Núm. 4. *supra*, otorgan expresamente al Comisionado de dicha entidad gubernamental el poder de fiscalizar las entidades bancarias internacionales y llevar a cabo todas las acciones necesarias para cumplir con sus funciones, incluyendo el nombramiento de un síndico para dirigir el proceso de liquidación de una entidad bancaria.

En concordancia con ello, de la *Querella y Orden*, validada por la *Resolución* emitida por OCIF a esos efectos, se desprende claramente que Driven será responsable de saldar las obligaciones y deudas de Nodus, luego de cubrir los gastos esenciales y directamente relacionados con la sindicatura. Además, establece que, a partir de su emisión, cualquier reclamación, <u>ya sea judicial o extrajudicial, que una persona o entidad tenga contra Nodus deberá dirigirse a Driven y tramitarse dentro del proceso de liquidación en la OCIF</u>.

Lo anterior resulta lógico, toda vez que la OCIF es la entidad especializada en lo relacionado al proceso de liquidación de una entidad financiera internacional y, por tanto, cuenta con la pericia y el marco normativo adecuado para resolver cualquier disputa que surja entre un depositante y un banco internacional. Tan es así que la Sección 18 de la Ley Núm. 52, *supra*, reconoce que el proceso ante el síndico nombrado por la OCIF no afectará **las <u>obligaciones derivadas</u> de cualquier contrato válido existente entre la entidad bancaria internacional y otras personas**. Entiéndase, el mencionado estatuto reconoce que las obligaciones derivadas del acuerdo bancario que existe entre Nodus y el Apelante, no se afectarían a pesar de que exista un proceso de liquidación de este tipo de entidad bancaria.

Además, si a lo anterior unimos los principios reconocidos por nuestro máximo foro judicial en <u>San José Realty, S.E. v. El Fénix de PR</u>, *supra*, resulta necesario que dichas reclamaciones se atiendan en un solo foro que permita abordar integralmente la problemática en cuestión. Resolver lo contario, iría en detrimento de este principio. No obstante lo anterior, si al finalizar el proceso ante la OCIF, BASAA no está de acuerdo con el remedio otorgado, tiene la alternativa de acudir a los Tribunales de Puerto Rico por vía de un proceso de revisión judicial. Por último, es menester aclarar que, a través de esta determinación, no se le está negando ni limitando el acceso a los tribunales, sino que se está estableciendo el trámite procesal que debe seguirse antes de acudir a los foros judiciales correspondientes.

Finalmente, no podemos pasar por alto que en su comparecencia ante el tribunal *a quo* la OCIF sostuvo que era el foro con jurisdicción para atender el reclamo interpuesto por el Apelante ante el TPI. Por tanto, siendo el ente con el *expertise* sobre la materia, concluimos que lo más sabio era que el foro de instancia se abstuviera de atender las causas de acción traídas por BASAA. Sobre todo, cuando la *Orden y Querella* expresamente dispone que toda reclamación, **ya sea judicial o extrajudicial, que tenga alguna persona o entidad en contra de Nodus, deberá dirigirse a la atención del síndico y atenderse dentro del proceso de liquidación de la OCIF**. Así pues, no se cometió el error esgrimido.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, *confirmamos* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones